**UNITED STATES of America,
Appellant,**

v.

**John NICHOLAS, Trustee of the Estate of Beachcomber Motel, Inc., Bankrupt, Appellee.**

**No. 21777.**

United States Court of Appeals
Fifth Circuit.

May 25, 1965.

Rehearing Denied July 9, 1965.

Karl Schmeidler, Atty., Dept. of Justice, Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, I. Henry Kutz, Attys., Dept. of Justice, Washington, D. C., William A. Meadows, Jr., U. S. Atty., Miami, Fla., for appellant; Lavinia L. Redd, Asst. U. S. Atty., of counsel.

Robert E. Venney, John H. Gunn, Miami, Fla., for appellee.

Before TUTTLE, Chief Judge, and RIVES and BELL, Circuit Judges.

TUTTLE, Chief Judge:

On August 6, 1958, Beachcomber Motel, Inc., filed a petition for an arrangement proceeding under Chapter XI of the Bankruptcy Act. It was permitted to retain possession of the property as Debtor in Possession until, upon failure to submit an acceptable plan, the company was adjudicated a bankrupt on September 17, 1958. During the intervening period of operation, the Debtor in Possession failed to make payment of certain taxes that accrued during this short period of operation. In fact, under the statute, the taxes that were collected or withheld for the quarter ending September 30, 1958, were not required to be included in returns to be filed until October 31, 1958. Others were to be returned by January 31, 1959. By this time, of course, the Trustee in Bankruptcy had succeeded to the duties of the former Debtor in Possession.

The Trustee failed to make the required returns and the Government filed an administrative expense statement of the taxes due covering the following amounts: $519.89 of withholding and FICA taxes (Federal Insurance Contributions Act) accruing between August 6, 1958, when the petition for arrangement was filed and September 17, 1958, when the taxpayer was adjudicated a bankrupt; $644 of cabaret excise taxes also accruing between the same dates, and $362.29 of FUTA (Federal Unemployment Tax Act) accruing during 1958. The aggregate of these items is $1,526.18.

Additionally, the United States stated as administrative expense, assessed interest on each of the three principal items above set forth in the amounts of $101.54, $17.58, and $4.46, respectively, totalling $123.58. These two sums, $1,526.18 principal amount of tax and assessed interest of $123.58, totalling $1,649.76, were allowed by the referee as an administrative tax claim entitled to first priority.

However, the referee sustained the trustee's objection to the Government's claim No. 51 as to the amounts set forth as alleged penalties and accrued interest. Thus, the referee disallowed the following amounts contained in the Government's administrative expense statement of taxes due; namely, assessed penalty on the withholding and FICA taxes in the amount of $129.97, on the excise taxes in the amount of $161, and on the FUTA

in the amount of $54.34, aggregating $345.31. The referee also disallowed interest after the date of the assessment and accrued to April 10, 1963 (the day before the date of filing of Claim No. 51) on the withholding and FICA taxes in the sum of $46.34, on the amount of excise taxes in the sum of $192.35, and on the amount of FUTA taxes in the sum of $99.55, totalling $338.24. Claim No. 51 also sought interest on the amounts due at the rate of 31 cents per day from April 11, 1963, the date of the filing of the claim.

The referee, as already stated, allowed as an administrative expense entitled to a first priority the principal amounts of the taxes and assessed interest. Thus, the only controversy here is with respect to his disallowance of the items of assessed penalties totalling $345.31 and interest accrued after the date of assessment, totalling $338.24, in all, $683.55 together with interest from April 11, 1963.

Upon a petition for review filed by the United States from the disallowance of these penalties and interest, the District Court affirmed the order of the referee.

■ As the Government points out, the distinction between taxes which accrue against a taxpayer prior to bankruptcy and those which accrue against a trustee after bankruptcy, has become well settled. Pre-bankruptcy taxes are payable as tax claims against the bankrupt's estate under § 57 of the Bankruptcy Act. 11 U.S.C.A. § 93. They are entitled to payment as of the Fourth priority under § 64, sub. a of the Act, 11 U.S.C.A. § 104. If, however, a trustee becomes subject to taxes as a result of operations carried on after bankruptcy, these taxes constitute an expense of administration under § 62, sub. a of the Act and, as such, are payable as a First priority under § 64, sub. a.

The duty of the trustee in bankruptcy to pay taxes which accrue during the course of his administration, independent of tax claims which had accrued prior

to bankruptcy, has long been recognized by the Supreme Court. See People of State of Michigan, by Haggerty v. Michigan Trust Co., 286 U.S. 334, 52 S.Ct. 512, 76 L.Ed. 1136. Here, of course, the referee recognized this obligation, and properly required the payment of the principal amount of the taxes as an expense of administration. He drew the line, however, at the payment of interest on this principal amount of the taxes and additions to the tax, commonly called a penalty, arising from the failure of the trustee to make the necessary returns and payments on time.

■ The trustee here contends that since the taxes accrued while the Debtor in Possession was operating the corporation later to become bankrupt, rather than the trustee after bankruptcy, the taxes that accrued during this period should be treated as pre-bankruptcy taxes as should also, of course, the interest and penalties, if they are payable at all, when the failure to make the proper returns and payments is a failure of the bankruptcy trustee. As the Government points out, however, when a debtor is permitted to retain his possession under a Chapter XI arrangement proceeding, he is, within contemplation of the law, just like a trustee, certainly to the extent of his obligation and duty to do the things that the statute would require of a trustee in possession. In fact, where a plan for arrangement turns out to be unsuccessful and an adjudication of bankruptcy is entered, § 378 of the Act provides that "the proceeding shall be conducted, so far as possible, in the same manner and with like effect as if a voluntary petition for adjudication in bankruptcy had been filed and a decree of adjudication had been entered on the day when the petition under this chapter was filed; * * *." 11 U.S.C. § 778. See United States v. Sampsell, 9 Cir., 193 F.2d 154. See also 8 Coll. on Bankruptcy (14 Ed. 1963 Rev.) Secs. 6.31 and 6.32 which states "the general purpose of § 342 is that where a debtor continues in possession of his property, he shall be in

fact a trustee. 'Its position as debtor, continued in possession, is for all practical purposes that of a trustee or receiver * * *.' 'A debtor continued in possession by court order is a court officer analogous to a receiver or trustee.' A debtor in possession 'has all the powers of an ordinary trustee * * *.' "

■ Thus, it is plain that the obligation of the trustee here was the same as if he had been in possession from the filing of the original Section XI proceedings. This being the case, it appears that the leading decision Boteler v. Ingels, 308 U.S. 57, 521, 60 S.Ct. 29, 84 L.Ed. 78, 442, answers the basic question whether the trustee is liable to the same obligation to make required returns and payments upon penalty of suffering additions to the tax that a private taxpayer would face. We think it clear that he is so subject. The Supreme Court said in that case, "[i]f businesses in California not conducted by a bankruptcy trustee are delinquent in the fees, they must pay the penalty. However, petitioner's contention would exempt a trustee operating a business in bankruptcy from this double tax liability which other delinquents must bear. A State would thus be accorded the theoretical privilege of taxing businesses operated by trustees in bankruptcy on an equal footing with all other businesses, but would be denied the traditional and almost universal method of enforcing prompt payment." (p. 61, 60 S.Ct. p. 32.)

We conclude that the principle announced in the Boteler case clearly applies here to the federal impositions. Thus, it follows that the referee and the trial court erred in not including the items listed above as costs and expenses of administration and thus payable under the First priority.

The judgment is reversed and the case is remanded for further proceedings not inconsistent with this opinion.