DONALD RUSSELL, Circuit Judge:
 

 Appellant United States Department of the Interior (DOI) appeals from the district court’s decision, which affirmed the bankruptcy court, denying its claim for an administrative expense for penalties assessed against the debtor in possession for post-petition violations of the Surface Mining Control and Reclamation Act of 1977, 30 U.S.C. §§ 1201-1328 (1983) (Surface Mining Act). The sole issue raised by this appeal is whether postpetition environmental penalty claims are allowable under section
 
 57(j)
 
 of the Bankruptcy Act, former 11 U.S.C. § 93(j) (1976), as an administrative expense of preserving the estate under section 64(a)(1) of the Bankruptcy Act, former 11 U.S.C. § 104(a)(1). Finding that postpetition environmental penalty claims are allowable under sections 57© and 64(a)(1) as an administrative expense, we reverse.
 

 I
 

 Elkins Energy Corporation (Elkins) filed a petition for an arrangement under Chapter XI of the Bankruptcy Act (Act) on August 3, 1979.
 
 [1]
 
 The bankruptcy court permitted Elkins, a mining corporation, to continue its operations as a debtor in possession, pursuant to section 343 of the Act, former 11 U.S.C. § 743. On September 11, 1979, the Office of Surface Mining Reclamation and Enforcement of the DOI (OSM) issued a notice of violation to the debtor in possession for three violations of the Surface Mining Act. Elkins corrected the three violations by October 3, 1979, but nevertheless was notified that a civil penalty of $1,100 had been proposed for the issued notice of violation. On February 28, 1980, the OSM issued two more notices of violation for several additional violations of the Surface Mining Act. While the notices of violation were outstanding, the bankruptcy court confirmed Elkins’ plan of arrangement. Elkins, however, failed to correct three of the cited violations; consequently, on June 17, 1982, OSM assessed
 
 *170
 
 Elkins civil penalties of $23,250 and $45,000 for the outstanding notices of violation and $1,100 for the initial notice of violation, pursuant to 30 U.S.C. § 1268(a) (1983). On that very day, the bankruptcy court converted Elkins’ case from a Chapter XI arrangement to a straight bankruptcy and appointed as trustee appellee James W. Elliott, Jr.
 

 On October 6, 1982, DOI filed a proof of claim for $69,350 for postpetition environmental penalties assessed against Elkins. The trustee timely objected to DOI’s claim, contending that section 57(j) of the Act prohibits allowance of claims for postpetition civil penalties. The bankruptcy court sustained the trustee’s objection to DOI’s claim, 38 B.R. 390 (1984), and the district court affirmed.
 
 [2]
 

 II
 

 The sole issue before us is whether section 57(j) of the Bankruptcy Act prohibits the recovery by DOI of environmental penalties assessed against Elkins, as a debtor in possession, after Elkins filed a petition for an arrangement in bankruptcy. Section 57(j), former 11 U.S.C. § 93(j), provides:
 

 (j) Debts owing to the United States or to any State or any subdivision thereof as a penalty or forfeiture shall not be allowed, except for the amount of the pecuniary loss sustained by the act, transaction, or proceeding out of which the penalty or forfeiture arose, with reasonable and actual costs occasioned thereby and such interest as may have accrued on the amount of such loss according to law.
 

 Although the language of section 57(j) appears broad enough to “bar all claims of any kind against a bankrupt except those based on a ‘pecuniary’ loss,”
 
 Simonson v. Granquist,
 
 369 U.S. 38, 40, 82 S.Ct. 537, 538, 7 L.Ed.2d 557 (1962), the Supreme Court has twice construed section 57(j) to allow postpetition tax penalty claims incurred by a trustee while operating the debtor’s business. In
 
 Boteler v. Ingels,
 
 308 U.S. 57, 59-60, 60 S.Ct. 29, 31-32, 84 L.Ed. 442 (1939), the Court stated, in holding a trustee liable for penalties incurred while the trustee operated the business of the debtor:
 

 Subdivision 57(j) prohibits allowance of a tax penalty against the bankrupt estate only if incurred by the bankrupt before bankruptcy by reason of his own delinquency. After bankruptcy, it does not purport to exempt the trustee from the operation of state laws, or to relieve the estate from liability for the trustee’s delinquencies.
 

 See Nicholas v. United States,
 
 384 U.S. 678, 692-695, 86 S.Ct. 1674, 1684-1686, 16 L.Ed.2d 853 (1966) (trustee liable for federal tax penalties incurred by the trustee after the bankruptcy petition had been filed). Moreover, the leading bankruptcy treatise, relying on
 
 Boteler,
 
 advises that section 57(j) “applies only to claims against the bankrupt arising
 
 prior to bankruptcy.
 
 It does not propose to exonerate a trustee or receiver in bankruptcy from penalties which he incurs in the course of continued operation of the bankrupt’s business.” 3 J. Moore .& L. King,
 
 Collier on Bankruptcy
 
 If 57.22[1], p. 386 (14th ed. 1977) (emphasis in original). It is, accordingly, beyond question that postpetition tax penalties incurred by a trustee while operating a bankrupt’s business are allowable under section 57(j).
 
 See also Gough Indus. Inc. v. Rothman,
 
 446 F.2d 536, 540 (9th Cir.1971),
 
 cert. denied,
 
 405 U.S. 916, 92 S.Ct. 933, 30 L.Ed.2d 785 (1972);
 
 In Re Samuel Chapman, Inc.,
 
 394 F.2d 340, 341 (2d Cir.1968);
 
 In Re Chicago & N.W. Ry. Co.,
 
 119 F.2d 971, 972 (7th Cir.1941);
 
 In Re Los Angeles Lumber Products Co.,
 
 45 F.Supp. 77, 87 (S.D.Cal.1942); Annot., 1 A.L.R.Fed. 657 (1969 & Supp.1984).
 

 But the trustee argues, and both the district court and the bankruptcy court held, that section 57(j) allows only postpetition
 
 tax
 
 penalties incurred by a
 
 trustee
 
 while operating the debtor’s business. The trustee contends that the Supreme Court in
 
 *171
 

 Boteler
 
 and
 
 Nicholas
 
 created a narrow exception to section 57®’s broad prohibition of penalty claims for tax penalties incurred by the trustee because, pursuant to 28 U.S.C. § 960 and its predecessor, Act of June 18, 1934, ch. 585, 48 Stat. 993, the trustee is required to pay all applicable federal, state, and local taxes while operating the debtor’s business. Since no similar statute compels the trustee to pay penalties arising from violations of regulatory statutes, the trustee contends that such penalties are not allowable under section 57(j). We disagree. Although no court has held that postpetition civil penalties incurred by a debtor in possession are allowable under section 57(j), we find that the rationale of
 
 Boteler
 
 and
 
 Nicholas
 
 extends beyond mere tax cases. We are convinced that section 57® allows
 
 all
 
 postpetition penalty claims, regardless of their type and regardless of whether they are incurred by the trustee or by the debtor in possession.
 

 Congress enacted section 57® to protect the innocent creditors of a debtor: Congress refused to allow claims for penalties because they are intended to punish the debtor for delinquencies
 
 caused by the debtor. See, e.g.,
 
 3 J. Moore & L. King,
 
 supra,
 
 at ¶ 57.22[1], p. 381;
 
 Simonson v. Granquist,
 
 369 U.S. at 40-41, 82 S.Ct. at 538-539;
 
 In Re Unified Control Systems, Inc.,
 
 586 F.2d 1036, 1038 (5th Cir.1978) (per curiam);
 
 United States v. Rome,
 
 414 F.Supp. 517, 519-520 (D.Mass.1976);
 
 In Re Kline,
 
 403 F.Supp. 974, 977 (D.Md.1975),
 
 aff'd,
 
 547 F.2d 823 (4th Cir.1977) (per curiam);
 
 In Re Shawsheen Dairy, Inc.,
 
 47 F.Supp. 494, 497 (D.Mass.1942). Penalties incurred by the debtor before the filing of the bankruptcy petition should not reduce the distribution to which the creditors are entitled, because the creditors could not prevent the accrual of the penalties.
 

 On the other hand, once the bankruptcy petition has been filed, the creditors can prevent the accrual of penalties. They, therefore, cannot by their inaction allow the debtor to incur penalties while operating the business, perhaps benefiting the profitability of the business, and yet object to the allowance of postpetition penalty claims. In effect, once the petition is filed the creditors lose their “innocent” status.
 

 If a debtor remains in possession, his operation of the business is subject “at all times to the control of the court.”
 
 [3]
 
 The creditors, through an elected creditors’ committee, are empowered to, among other things, “examine into the conduct of the debtor’s affairs”
 
 [4]
 
 and to make recommendations to the supervising bankruptcy court concerning the debtor’s operation of the business. The leading bankruptcy treatise recognizes the watchdog role of the creditors.
 

 The operation of the business by the debtor in possession is to be done under the authority and supervision of the court, however. The creditors have an interest in this operation, and through their committee of creditors elected at the initial meeting may give voice to their judgment as to how the business should be run. Therefore, the committee elected at the first meeting will consider matters of operation, and may make recommendations and suggestions as to the operation of the business during the pendency of the case. ... The court ... will ... give close consideration to the voice of creditors given through the committee of creditors elected at the first meeting.
 

 8 J. Moore & L. King,
 
 Collier on Bankruptcy
 
 § 5.15, p. 581 (14th ed. 1978). Since the creditors’ committee can request the bankruptcy court to intervene in the debt- or’s operation of the business, the creditors cannot shield their eyes from the debtor’s unlawful activities, activities that may benefit the creditors by increasing the distribution to which the creditors are entitled. Subjecting the estate to postpetition penalty claims will encourage the creditors to ensure that the debtor is complying with the law while at the same time ensure that
 
 *172
 
 violations of law do not go unpunished. The Second Circuit, in holding that tax penalties incurred by a debtor in possession are allowable under section 570, recognized that creditors should not be permitted to benefit from the debtor in possession’s delinquencies:
 

 [A] rule under which the estate will remain liable for the tax penalties may well result in inducing the general creditors to interest themselves in the debtor in possession’s promptly discharging his duties under the revenue laws and thus aiding in the proper collection of the taxes which fall due during arrangement proceedings.
 

 In Re Samuel Chapman, Inc.,
 
 394 F.2d 340, 342 (2d Cir.1968).
 

 The trustee’s reliance on
 
 Simonson v. Granquist,
 
 369 U.S. 38, 82 S.Ct. 537, 7 L.Ed.2d 557 (1962) and a string of related cases
 
 [5]
 
 is misplaced, because at issue in those cases were prepetition penalty claims, not postpetition penalty claims. Consequently, the broad language in
 
 Si-monson
 
 that section 57(j) “plainly manifests a congressional purpose to bar all claims of any kind against a bankrupt except those based on a ‘pecuniary’ loss,” 369 U.S. at 40, 82 S.Ct. at 538, is inapposite. Instead, the holding of both
 
 Boteler
 
 and
 
 Nicholas
 
 is more instructive, because there is no reasoned distinction between various types of postpetition penalty claims. Whether the postpetition penalty is a tax penalty or an environmental penalty
 
 [6]
 
 and whether the penalty is incurred by the trustee or the debtor in possession is irrelevant: the critical inquiry is the extent to which the creditors could prevent the accrual of the penalties. In light of the ability of the creditor’s committee to act as the watchdog of the debtor and to object to the debtor’s operation of the business to the ever-supervising bankruptcy court, all postpetition penalty claims are allowable under section 57(j). After the bankruptcy petition is filed, the creditors lose their “innocence” due to their ability to take action to prevent the debtor in possession from incurring postpetition penalties.
 

 The trustee further argues that the public policy of preventing the estate from being diluted by the assessment of penalties supports disallowance of the postpetition penalty claims here at issue. The trustee, however, ignores that in another similar setting, namely when postpetition tax penalty claims are at issue, postpetition penalty claims are allowable. Furthermore, the articulated purpose of section 57(j), the protection of innocent creditors from penalty claims incurred by an independent debtor, would not be furthered by a holding that permits creditors to benefit from their silence while the debtor violates the law.
 

 We, therefore, hold that postpetition environmental penalties assessed against the debtor in possession for violations of the Surface Mining Act are allowable under section 57(j). Therefore, DOI’s claim of $69,350 for an administrative expense of preserving the estate under section 64(a)(1) of the Act, former 11 U.S.C. § 104(a)(1), should have been allowed. The judgment of the district court is accordingly
 

 REVERSED.
 

 [1]
 

 . Since Elkins’ petition was filed before October 1, 1979, the effective date of the Bankruptcy Reform Act of 1978 for purposes of this litigation, this appeal is governed by the provisions' of the Bankruptcy Act. Pub.L. No. 95-598, § 403(a), 92 Stat. 2683 (1978).
 

 [2]
 

 .
 
 United States Dept. of the Interior v. Elliott,
 
 40 B.R. 985 (W.D.Va.1984).
 

 [3]
 

 . Bankruptcy Act § 342, former 11 U.S.C. § 742.
 

 [4]
 

 . Bankruptcy Act § 339(l)(a), former 11 U.S.C. § 739(l)(a).
 

 [5]
 

 .
 
 In Re Petite Auberge Village, Inc.,
 
 650 F.2d 192 (9th Cir.1981);
 
 In Re Becker’s Motor Transp., Inc.,
 
 632 F.2d 242 (3d Cir.1980),
 
 cert. denied,
 
 450 U.S. 916, 101 S.Ct. 1358, 67 L.Ed.2d 341 (1981);
 
 In Re Unified Control Systems, Inc.,
 
 586 F.2d 1036 (5th Cir.1978) (per curiam):
 
 United States v. Wagner,
 
 390 F.2d 13 (10th Cir.1968):
 
 In Re Brewster-Raymond Co.,
 
 344 F.2d 903 (6th Cir.1965).
 

 [6]
 

 . We decline to draw a distinction between post-petition tax penalties, such as those at issue in
 
 Boteler
 
 and
 
 Nicholas,
 
 and penalties incurred for violations of environmental regulations. Preserving and maintaining this nation’s natural beauty is an important governmental interest. Furthermore, the existence of methods, other than the assessment of civil penalties, of effecting compliance with the Surface Mining Act and regulations promulgated thereunder,
 
 see
 
 30 U.S.C. § 1271, does not affect our construction of § 57(j). We are unprepared to interfere with the discretion vested in the Secretary of the Interior to ensure compliance, by whatever means he deems to be most effective, with the Surface Mining Act.